**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

CATHY M. McBRIDE,                                  :

     Plaintiff,                                  :

vs.                                                :        CA 17-0036-MU

NANCY A. BERRYHILL,                                :
Acting Commissioner of Social Security,
                                                   :
     Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21-22 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the November 8, 2017 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21-22 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of (Continued)

# I. Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on February 25, 2014, alleging disability beginning on June 15, 2013. (*See* Tr. 148-51.) Her claim was initially denied on May 13, 2014 (Tr. 104-10) and, following Plaintiff's July 10, 2014 request for a hearing before an Administrative Law Judge (*see* Tr. 111-13), a hearing was conducted before an ALJ on August 7, 2015 (Tr. 42-89). On November 3, 2015, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to disability insurance benefits. (Tr. 27-37.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that McBride retains the residual functional capacity to perform those sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 36 *with* Tr. 84-85). On December 4, 2015, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 22); the Appeals Council denied McBride's request for review on December 22, 2016 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to degenerative disc disease, degenerative joint disease, obesity, an affective disorder, and anxiety. In light of the issues raised by Plaintiff in her brief (*see* Doc. 14, at 2-7), the Court's principle focus is on the ALJ's residual functional capacity assessment.

> **2.    The claimant has not engaged in substantial gainful activity since June 15, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).**

_____

appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

.    .    .

**3.** **The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, obesity, affective disorder and anxiety (20 CFR 404.1520(c)).**

.    .    .

**4.** **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

.    .    .

**5.** **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant needs a sit/stand option at will. She can never climb ladders, ropes or scaffolds and can occasionally stoop, crouch, kneel or crawl. The claimant can only occasionally reach overhead with the right arm, and should be employed in a low stress job, defined as only occasional decision making required.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally

limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that problem[s] with her knees and her depression limit[] her ability to work. The claimant testified she uses a cane all the time, prescribed by Dr. Fontana; and described back pain that radiates down [her] left leg. The claimant said she underwent surgery in July 2013 for doctors to "go in and clean the nerve" but that surgery did not help and she still has pain. She testified that both legs hurt, but [that she] has more pain in the left leg.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged bilateral knee pain, orthopedic notes from Andre Fontana, M.D., show he initially began treating [the claimant] on July 8, 2013. His notes indicate the claimant was seen at Providence Hospital in February 2013 for "possible DVT," but that no evidence was found. The claimant endorsed knee and leg pain with popping and swelling. Dr. Fontana ordered a venous Doppler study, which concluded no evidence of DVT, but showed popliteal cyst on [the] left knee; and x-ray confirmed a lateral meniscus tear. On August 16, 2013, Dr. Fontana performed a left knee arthroscopy with partial lateral meniscectomy and partial synovectomy to repair the meniscus tear. On her three-week evaluation, the claimant expressed to Dr. Fontana that she still had severe pain at times, but was doing better overall[,] yet endorsed right knee pain. X-rays of the right knee showed minimal arthritis, which yielded [a] diagnosis of arthritis of the knee. The claimant returned on October 10, 2013, complaining of increased right knee pain after sustaining a twist injury to the knee on September 30, 2013. A MRI on October 21, 2013 showed acute chronic strain of right knee, diagnosed as osteoarthritis involving meniscus tear. Dr. Fontana noted that the right knee was worse than the left. He initially treated the right knee with injections[] but ultimately performed arthroscopic surgery on November 20, 2013 to repair [a] tear in the right knee. The preoperative diagnoses revealed: medial meniscus tear and arthritis of [the] right knee; tear of anterior horn of medial meniscus; tear of middle portion of lateral meniscus; degenerative arthritis of patella grade 3-4; degenerative arthritis medial fermoral condyle grade 2-3; degenerative arthritis of lateral plateau grade 1 and lateral femoral condyle grafe (sic) and frayed plica; arthroscopic surgery with

partial medial and lateral meniscectomies. On December 2, 2013, the claimant presented[ with] complaint[ts] of right leg pain[] and underwent a venous Doppler study that showed no evidence of DVT. At follow-up on January 20, 2014, the claimant reported that her knee was doing okay, but was still painful. The examination concluded [with an] impression of arthritis in the knee. Dr. Fontana discussed options of living with pain[] and injections. The claimant elected to continue with medications, home exercises and Norco #10. Progress notes on March 7, 2014 indicated [continuing] problem[s] with the right knee[] and claimant stated she gets 40% relief taking Norco, but has significant pain when climbing stairs. The examination yielded [a] diagnosis of arthritis of the knee, crepitus with mild effusion and neurovascularly intact.

The objective evidence supports a history of lumbar pain, which was not alleged at the time of filing, but was presented during the hearing[] and is considered in the overall determination of disability. Records from Dr. Fontana on April 21, 2014, indicate the claimant presented with complaints of back pain after she admitted doing a lot of cooking[,] and indicated the pain could have been aggravated by lifting, bending, stooping, and twisting. Physical exam showed forward flexion 20, extension 10, lateral flexion 15 left and right with spasm. Sensory and motor was intact. X-rays of [the] lumbar spine showed some degenerative disc changes. The claimant was diagnosed with lumbar strain. At a physical examination on May 6, 2014, review of upper extremity confirmed some difficulty with forward elevation with probable weakness, restricted range of motion and weakness in shoulder. There was evidence of persistent restricted range of motion of cervical spine. The diagnoses yielded cervical radiculopathy[,] failed conservative treatment; probable/possible rotator cuff tear of shoulder or impingement of shoulder, right. The claimant also underwent a cervical MRI on August 6, 2014. Findings showed at C2-3, C3-4, C4-5, C6-7 and C7-T1; there was no disk herniation, neurocompressive midline, lateral recess, or foraminal stenosis[,] C5-6; there was a shallow posterior disk bulge without neurocompression and mild foraminal encroachment secondary to facet joint arthropathy bilaterally. The impression revealed C5-6 spondylosis with discogenic endplate change anteriorly, shallow bulge, and facet joint arthropathy encroaching the neural foramina bilaterally. A lumbar MRI on November 21, 2014 revealed alignment, vertebral body heights, and marrow signal to the vertebral bodies of the lumbar spine were preserved. Disk height and hydration was within normal limits. The conus medullaris was posterior to the L1-2 interspace. The L1-2, L2-3, and L3-4 disks were also within normal limits. L4-5 area showed <u>subtle</u> left paracentral annular bulge with <u>mild</u> narrowing to the left exiting foramina and <u>borderline</u> narrowing to the right exiting foramina. L5-S1 disk was within normal limits, as well. The impression concluded <u>mild</u> left paracentral annular

bulge at L4-5 with <u>mild</u> narrowing to the origin of the left exiting foramina and <u>borderline</u> narrowing to the right exiting foramina at L4-5.

Evidence documenting and establishing an impairment of the right shoulder[] indicate a MRI on August 6, 2014, showed impression of mild internal impingement secondary to AC joint arthropathy, but showed no appreciable evidence of lateral tear or rotator cuff tear. Dr. Fontana encouraged the claimant to continue her shoulder strengthening exercises. A follow-up exam on August 11, 2014 yielded impression of shoulder impingement. Dr. Fontana recommended arthroscopic surgery for [the] right shoulder, which was performed in October 2014. At three-week follow-up, Dr. Fontana noted that the surgical site looked great. The claimant indicated that she did not want to attend therapy. On physical examination, the claimant demonstrated good range of motion with only minimal swelling in mid-biceps. Sensory and motor were intact neurovascularly. Dr. Fontana recommended an ultrasound and noninvasive venous flow study to the right arm[] and prescribed Norco #10 for pain management.

.      .      .

As for the claimant's subjective allegation that she is disabled due to arthritis associated with bilateral knee pain, the allegation is not fully credible. The[] facts in the record do not dispute that the claimant may have pain from arthritis that affects the knees, [but] what the evidence suggests is that the claimant's symptoms may not exist at the level of severity assumed by the claimant's testimony at [the] hearing or which may have negative impact on the claimant's ability to engage in work activity. The above residual functional capacity, as determined by the undersigned, gives adequate weight to the facts as determined credible. The claimant has longstanding treatment for arthritis that affects the knees, bilateral[ly,] and is status-post surgery times two to repair meniscus tears. The records from Dr. Fontana, a longtime treating physician, indicate[,] however, that the claimant presented on April 21, 2014 with reported back discomfort[] but acknowledged that she had recently done a lot of cooking, and indicated her pain could have been aggravated by lifting, bending, stooping, and twisting. Thus, the claimant has described daily activities[] which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations from bilateral knee pain. Noteworthy, the claimant's presentation to Dr. Fontana was inside the 12-month duration period of the alleged onset date (June 15, 2013). The claimant underwent venous Doppler studies that ruled out deep vein thrombosis (DVT)[,] and[,] on January 20, 2014, indicated to Dr. Fontana that her knee was doing okay, but was still painful. Dr. Fontana discussed options of living with pain[] and injections. The claimant elected to continue with medications, home exercises and Norco #10.

Additionally, there is objective evidence that reflects diagnoses of lumbar radiculopathy and shoulder impingement that have been considered in the overall determination of disability. However, even when combined with the arthritis of the knees, the additional impairments do not support a finding of disability. On August 6, 2014, the claimant was diagnosed with mild internal impingement secondary to AC joint arthropathy. Dr. Fontana subsequently recommended arthroscopic surgery for [the] right shoulder, which was performed in October 2014. At three-week follow-up, Dr. Fontana noted that the surgical site looked great. The claimant indicated that she did not want to attend physical therapy and[,] on physical examination, [she] demonstrated good range of motion with only minimal swelling in mid-biceps. Sensory and motor were intact neurovascularly. Dr. Fontana recommended an ultrasound and noninvasive venous flow study to the right arm[] and prescribed Norco #10 for pain management. Similarly, despite the diagnosis of lumbar radiculopathy, a lumbar MRI on November 21, 2014 secondary to reported back pain yielded impression of <u>mild</u> left paracentral annular bulge at L4-5 with <u>mild</u> narrowing to the origin of the left exiting foramina and <u>borderline</u> narrowing to the right exiting foramina at L4-5. Although the evidence show[s] the claimant underwent a left L4-5 hemilaminectomy on July 13, 2015 to address her lumbar disorders, progress notes on August 3, 2015 indicate that while the claimant still has some restricted range of motion, [she] is intact neurovascularly[] and[,] per her treating physician, may be improved some. Prior to surgery, progress notes on June 26, 2015 reflect normal range of motion, normal muscle strength, with no atrophy, gait was smooth, and claimant was able to stand without difficulty. Post-laminectomy progress notes shows normal gait, although post-op pain was present, but wound was healing well. The physician indicates he will continue with activity modification and medication, and see claimant in one month for follow-up. Thus, while the fact that the claimant underwent surgeries for her impairments certainly suggests that the symptoms were genuine, and would normally weigh in the claimant's favor, it is offset by the fact that it is too early to know the results of this surgery. The claimant testified that she does not take medications, as she does not want to be a zombie; however, the evidentiary record does not support where any side effects from medication have been of such extreme degree. Consequently, the decision to avoid taking medications deemed medically necessary by treating sources[] suggest that perhaps the claimant's symptoms may not have been as limiting as alleged. Furthermore, in the present case, even the use of prescribed medications would not suggest the presence of an impairment that is more limiting than found in this decision. Moreover, the claimant said she could only sit for 5 to 10 minutes, but sat longer than that in the hearing. The claimant also stated that she passes her time reading the Bible or watching television[,] which are both sedentary activities. Concerning the claimant's obesity, the

undersigned fully accommodated its potential impact on her other severe impairments in formulating the residual functional capacity finding, pursuant to SSR 02-1p. In any event, giving the claimant the benefit of the doubt, the undersigned[,] in formulating the residual functional capacity finding, precludes the claimant from climbing ladders, ropes or scaffolds[] and acknowledges that the claimant's pain may cause a reduction in her ability to concentrate and[,] accordingly, finds the claimant employable in a low stress job involving only occasional decision making.

As for the claimant's credibility in general, the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable, which decreases her credibility.

As for the opinion evidence, after conducting an extensive review of the medical evidence of record[] and[,] in particular, the longitudinal treatment notes from Dr[]. Fontana, that are generally consistent with the other credible objective evidence[] and which supports the residual functional capacity finding. In general, the record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations greater than those determined in this decision. . . .

In sum, the above residual functional capacity assessment is supported by a preponderance of the most credible objective evidence of record as determined in this decision.

**6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

.        .        .

**7.      The claimant was born on October 30, 1969 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).**

**8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in**

**significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**

.     .     .

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative sedentary unskilled occupations such as assembler, DOT 706.684-030, SVP 2 and includes approximately 104,000 jobs in the national economy; call out operator, DOT 237.367-014, SVP 2 and includes approximately 140,000 jobs in the national economy; and addresser, DOT 209.587-010, SVP 2 and includes approximately 125,000 jobs in the national economy.

Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The DOT does not contain information specific to jobs that allow the worker to sit/stand at will. The vocational expert's testimony regarding the availability of jobs allowing a sit/stand option is based on her education, experience and training. The undersigned finds this credible and the explanation for the deviation from the DOT is accepted.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.   The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2013, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 29, 30, 31-33, 34-35, 35, 35-36 & 36-37 (internal citations omitted; emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as found here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny McBride benefits, on the basis that she can perform those sedentary, unskilled jobs identified by the vocational expert at the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

On appeal to this Court, McBride asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's residual functional capacity determination is not supported by substantial evidence; and (2) the ALJ reversibly erred in failing to provide evidence demonstrating the existence of other work existing in significant numbers that she can perform in light of the assigned residual functional capacity. Because the undersigned finds that the ALJ erred to reversal with respect to Plaintiff's first assignment of error, the Court has no reason to address McBride's second assignment of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Sec. Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond

appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant needs a sit/stand option at will. She can never climb ladders, ropes or scaffolds and can occasionally stoop, crouch, kneel or crawl. The claimant can only occasionally reach overhead with the right arm, and should be employed in a low stress job, defined as only occasional decision making required.**" (Tr. 31 (emphasis in original)).

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether

substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[4] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all

---

[4] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the Court finds that the ALJ did not completely link his RFC assessment—that is, a reduced range of sedentary work—to specific evidence in the record bearing upon McBride's ability to perform the physical, mental, sensory and other requirements of sedentary work because he failed to set forth credible reasons for finding that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" (Tr. 32), as more precisely set out hereinafter.

The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.[5] If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* at 1225 (internal citations omitted; footnote added).

"20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or

---

[5] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw a reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." SSR 88-13.

other symptoms *must* be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis supplied).  In other words, once the issue becomes one of credibility and, as set forth in SSR 96-7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the adjudicator (ALJ) in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. § 404.1529(c). More specifically, "[w]hen evaluating a claimant's subjective symptoms, the ALJ *must* consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Sec. Admin.*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (emphasis supplied), quoting 20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)).

In this case, the ALJ clearly recognized that plaintiff's impairments meet the pain standard (*see* Tr. 32 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]")) yet found that her subjective pain complaints were not entirely credible (*id*. ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.")).[6] However, the ALJ, in making his credibility finding, *see Foote, supra,* at 1561, did not consider all of the objective medical evidence of record and did not set forth explicit and adequate reasons for rejecting McBride's testimony of pain and medication side effects.

In this case, the ALJ first evaluated Plaintiff's pain testimony regarding her knees (Tr. 34) and then "separately" tackled McBride's pain testimony directed to her lumbar spine and right shoulder (Tr. 34-35). With respect to her knees, the ALJ acknowledged that Plaintiff has long been treated for knee arthritis, has undergone surgery on both knees, and, therefore, undeniably has pain in the knees but "hinges" the finding that McBride's "symptoms *may not* exist at the level of severity *assumed* by the claimant's testimony at [the] hearing" on Plaintiff's April 21, 2014 office visit to her treating physician, Dr. Andre Fontana, wherein she reported back discomfort because she cooked a lot the previous Friday and could have aggravated her back because of lifting, bending, stooping, and twisting. (Tr. 34 (emphasis added); *see also id*. ("Thus, the

---

[6]      If this "canned" and conclusory analysis was allowed to suffice on its own, the requirement that ALJs account for the "other factors" set forth in 20 C.F.R. § 404.1529(c)(3) would be eviscerated. Indeed, sanctioning such approach would effectively allow ALJs to reject a claimant's testimony of pain (and other symptoms) without articulating "*explicit* and *adequate* reasons for doing so." *See Wilson, supra,* 284 F.3d at 1225 (emphasis supplied).

claimant has described daily activities[] which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations from bilateral knee pain.")). The ALJ's reliance on this one report from Plaintiff to her treating physician in 2014 to discredit her complaints of disabling knee pain no doubt accounts for the ALJ's lack of conviction (*see id.* (finding that Plaintiff's "symptoms ***may not*** exist at the level of severity ***assumed*** by the claimant's testimony at [the] hearing")) and is simply insufficient, standing alone (which it does), to constitute an adequate reason for rejecting McBride's August 7, 2015 hearing testimony that she experiences disabling knee pain (Tr. 55-57). And the reason it is insufficient is not simply because it appears to assume that this report was a reflection of Plaintiff's daily activities each and every day of her life, and not, as reported to Dr. Fontana, a report of enhanced activities on one particular day (Tr. 558 ("She states her back pain flared up Friday and got a lot worse. She says she cooked a lot that day and may have aggravated it by lifting, bending, stooping, and twisting."); *compare id. with, e.g.,* Tr. 559 (on April 7, 2014, McBride was diagnosed with osteoarthritis of the knee and noted to have crepitus and pain in the knee with some mild swelling) & Tr. 560 (on July 24, 2014, Plaintiff reported continuing problems with the left knee, a notation being made that she was being provided with a Velcro-hinged knee brace)), but, more importantly, because the ALJ wholly failed to take into account the medical evidence of record establishing a worsening of Plaintiff's right knee in early 2015 (*see* Tr. 612-15),[7] which certainly could

---

[7]     The ALJ nowhere in his decision makes mention of any medical evidence of record related to Plaintiff's knees from 2015. (*See* Tr. 32 (ALJ's review of the medical evidence relative to Plaintiff's knees "starts" in February 2013 and "concludes" with reference to a progress note dated March 7, 2014)).

have accounted for Plaintiff's testimony regarding her knee pain. Indeed, McBride had an MRI of her right knee on March 31, 2015, which revealed chondromalacia of the patella (progressed from the October 10, 2013 study) with some fissuring, patellar tendinitis, post-surgical changes to the medial meniscus with mild thinning of the articular cartilage of the medial femoral condyle, and several cysts (Tr. 614), and while Dr. Fontana found no reason to perform additional surgery on the knee, he did not question that McBride continued to have pain and popping in the knee (Tr. 615).[8] In other words, the ALJ's reliance upon an isolated report of physical activities undertaken on one day in April of 2014 cannot serve as substantial evidence that Plaintiff's pain testimony regarding her knees is not credible to the extent alleged where there is a wholesale failure to consider relevant medical evidence regarding a worsening of the condition of Plaintiff's right knee from March and April of 2015, a time in closer proximity to the administrative hearing.

The ALJ offered the following "reasons" for rejecting McBride's back and shoulder pain complaints:

> [W]hile the fact that the claimant underwent surgeries for her impairments certainly suggests that the symptoms were genuine, and would normally weigh in the claimant's favor, it is offset by the fact that it is too early to know the results of this surgery. The claimant testified that she does not take medications, as she does not want to be a zombie; however, the evidentiary record does not support where any side effects from medication have been of such extreme degree. Consequently, the decision to avoid taking medications deemed medically necessary by treating sources[] suggest that perhaps the claimant's symptoms may not have been as limiting as alleged. Furthermore, in the present case, even the use of prescribed medications would not suggest the presence of an

---

[8] The ALJ also made no mention of the medical evidence that reflects continuing problems with Plaintiff's left knee. (*See* Tr. 617 (June 17, 2015 office note from Dr. Fontana references moderate effusion and some crepitus of the left knee)).

impairment that is more limiting than found in this decision. Moreover, the claimant said she could only sit for 5 to 10 minutes, but sat longer than that in the hearing. The claimant also stated that she passes her time reading the Bible or watching television[,] which are both sedentary activities.

(Tr. 35.) The "first" reason offered by the ALJ certainly cannot be regarded as an adequate reason for rejecting Plaintiff's back complaints because the ALJ's recognition that "it is too early to know the results of the surgery[]" (*id.*) simply offers no foundation for the (apparent) implicit suggestion that Plaintiff's hearing testimony was not credible at the time given; indeed, it is just as likely that McBride was experiencing the pain about which she testified (Tr. 57-59) given that the August 7, 2015 hearing took place a mere three and one-half (3½) weeks after Plaintiff's back surgery (*see* Tr. 628-29; *compare id. with* Tr. 624 (Dr. Fontana's August 3, 2015 notation of restricted range of motion of the lumbar spine and continuing discomfort) & Tr. 625 (surgeon's July 28, 2015 notation that Plaintiff reported her preoperative symptoms persist, including "pain, paresthesias, and left leg still numb at times, worse when standing."))[9] And the remaining reasons offered by the ALJ are inadequate because they necessarily "depend" (or are based) on some mischaracterization of Plaintiff's hearing testimony. The ALJ's  "medication" discussion is totally off base because McBride's "zombie" testimony relates not to the medication prescribed to treat her pain but, instead, to one of the medications (Seroquel[10]) prescribed to treat her mental impairments (Tr. 77),[11]

_____

[9]        In fact, this is no reason at all for the rejection of Plaintiff's pain complaints; it is more aptly described as no reason at all because it is a mere musing.

[10]        Seroquel is indicated for the treatment of depression, bipolar disorder, and schizophrenia.   https://www.quora.com/What-is-the-drug-Seroquel-indicated-for   (last   visited, December 20, 2017, 5:18 p.m.).

and Plaintiff clearly testified that she takes her pain medication (Norco 10 and Percocet) daily—every 4 to 6 hours—and that the pain medications make her drowsy and fatigued (*id.*); therefore, this portion of the ALJ's analysis (which makes up the lion's share of the entire analysis) is incorrect and certainly does not constitute an adequate reason to reject Plaintiff's testimony regarding her back and shoulder pain.[12] And the observation that Plaintiff sat for longer than 5 to 10 minutes during the hearing, despite her testimony that she can only sit for 5 to 10 minutes (Tr. 35), is misleading because it fails to properly encapsulate that testimony by recognizing that McBride estimated that she can only sit for 5 to 10 minutes "at one time" before having to get up and move around (Tr. 71) and that Plaintiff had to stand during an unknown period of time during the hearing (Tr. 64-65 (Plaintiff stands); *see also* Tr. 70 ("Q [by the ALJ:] Okay. Now tell me about sitting. You know, you sat for **I don't know how long**, when we started the hearing, **but then you got so uncomfortable you had to stand up.** Is that pretty

---

[11]     McBride testified that because the Seroquel tends to knock her out, she does not take it every night. (Tr. 76-77.)

[12]     Indeed, given the ALJ's numerous mischaracterizations of the Plaintiff's testimony regarding her pain medications, one of which failed to credit Plaintiff's unequivocal testimony that these medications make her drowsy and fatigued (Tr. 77), testimony which   is believable from the standpoint that some of the common side effects of Norco 10 (for instance) are drowsiness and fatigue, *compare* https://www.rxlist.com/norco-side-effects-drug-center.html (last visited, December 21, 2017, 9:18 a.m.) (recognizing one of the common side effects of Norco is drowsiness) *with* https://www.ehealthme.com/ds/norco/fatigue (last visited, December 21, 2017, 9:19 a.m.) (noting that fatigue is found among people who take Norco), this action need be remanded to the Commissioner for "findings on the effects of the medications on the ability to work as part of the overall duty to fully develop the record." *Leiter, supra,* 377 Fed.Appx. at 949. The need to perform an appropriate analysis is particularly apparent where, as here, the vocational expert testified that an individual who, because of pain or medication side effects, would not be able to maintain employment if she was off task for 20% of the workday or missed two days of work per month. (*See* Tr. 85-86.)

typical of a day?" (emphasis supplied)); therefore, while Plaintiff may, indeed, have sat for more than a "total" of 10 minutes during the hearing, there is nothing to contradict Plaintiff's "estimation" that she only sit for 5 to 10 minutes at a time before she has to stand or move around. Accordingly, the ALJ's mischaracterization of Plaintiff's testimony in this regard cannot serve as an adequate basis to reject her back and shoulder pain testimony.[13] And, finally, the ALJ's observation that Plaintiff passes the time engaging in the sedentary activities of reading her Bible and watching television (Tr. 35) is at least partially off-base both because these activities do not in any manner contradict Plaintiff's testimony regarding her shoulder and, again, the ALJ failed to recognize the entirety of Plaintiff's testimony in this regard, McBride specifically testifying that she tries to read her Bible but "can't stay too focused on that[]" (Tr. 73)[14]; therefore, again, the undersigned cannot find that this final observation by the ALJ constitutes an adequate basis for the wholesale rejection of Plaintiff's back and shoulder pain testimony.[15]

This Court would be remiss in failing to relay its concern regarding the ALJ's critical failure to account for all relevant record in evidence in this case. The undersigned has previously expressed concern regarding the ALJ's failure to consider evidence of Plaintiff's continuing problems with her knees in 2015 but this is not the only

---

[13]    Indeed, this reason provides no basis for rejecting Plaintiff's testimony regarding her shoulder pain. In truth, the only reason in the ALJ's list that arguably applies to McBride's right shoulder is the incorrect one regarding Plaintiff's pain medications. Therefore, the ALJ offered no adequate reason for rejecting Plaintiff's shoulder (and, to be fair, associated neck) pain complaints (*see* Tr. 62-64).

[14]    Moreover, while these activities may be characterized as "sedentary," they certainly can be engaged in while an individual stands or walks around.

[15]    And given the aforementioned flaws regarding Plaintiff's testimony about the side effects she experiences from her pain medications, a remand would remain appropriate even if the ALJ's observation in this regard (as well as the "sitting" observation) was "spot on."

relevant evidence of record the ALJ completely ignored. For instance, Plaintiff was clearly using a cane during the hearing and she testified that Dr. Fontana prescribed the cane (*see* Tr. 56-57), which is certainly evidence of treatment received for relief of pain or other symptoms, *see* 20 C.F.R. § 404.1529(c)(3)(v), yet the ALJ's contains no specific finding that use of a cane would not impact Plaintiff's ability to perform sedentary work activity. However, most concerning is the ALJ's failure to mention evidence in the record reflecting that Plaintiff's driver's license was suspended in May of 2014 based upon information supplied by Dr. Fontana regarding right arm pain and weakness emanating from cervical radiculopathy and rotator cuff repair (*compare* Tr. 47, 50-51 & 71-72 *with* Tr. 551-53), evidence which again would appear to fall into the category of "[t]reatment, other than medication, [] receive[d] . . . for relief of . . . pain or other symptoms[.]" 20 C.F.R. § 404.1529(c)(3)(v).[16]

In light of the foregoing and, more specifically, because the ALJ's various credibility determinations are flawed, this Court is unable to find that the ALJ provided the linkage necessary to substantiate his RFC determination. Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to

---

[16]    This evidence serves to underscore the severity of Plaintiff's right shoulder and cervical spine/neck impairments and certainly suggests that McBride would have limitations with respect to all types of reaching (because of pain and weakness), not merely with respect to reaching overhead as found by the ALJ (*see* Tr. 31).

sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 24th day of January, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**